hmg 2.3.25
SLT: USAO# 2023R00427



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. MJM 25 cr 22 |
| | * | |
| v. | * | (Conspiracy to Commit Visa Fraud |
| | * | and Marriage Fraud, 18 U.S.C. |
| ELLA ZURAN, | * | § 371; Forfeiture, 18 U.S.C. |
| TATIANA SIGAL, | * | § 982(a)(6) and (b)(1), 21 U.S.C. |
| SHAWNTA HOPPER, and | * | § 853(p)) |
| ALEXANDRA TKACH, | * | |
| | * | |
| Defendants. | * | |
| | * | |

******

## INDICTMENT

### COUNT ONE
(Conspiracy to Commit Visa Fraud and Marriage Fraud)

The Grand Jury for the District of Maryland charges that:

At all times material to the Indictment:

1.   **ELLA ZURAN ("ZURAN")** was born in the Soviet Union and has resided in New York City, New York, since 1979.  She was naturalized as a United States citizen in 1992.

2.   **TATIANA SIGAL ("SIGAL")** was born in Uzbekistan, is a citizen of Ukraine, and has resided in the United States as a Lawful Permanent Resident since 2003.  She resided in New York City, New York.

3.   **SHAWNTA HOPPER ("HOPPER")** was a United States citizen and resident of New Jersey.

4.   **ALEXANDRA TKACH ("TKACH")** was born in Ukraine and has resided in New York City, New York, since 2002.  She was naturalized as a United States citizen in 2016.

## United States Citizenship and Immigration Services and its Forms

5.  United States Citizenship and Immigration Services ("USCIS") was an agency of the United States Department of Homeland Security ("DHS") responsible for overseeing lawful immigration to the United States and providing procedures for United States citizens and permanent residents to acquire permanent resident status for their immigration spouses. To perform this function, USCIS required persons to submit various immigration forms. These forms included:

a. DHS USCIS Form I-130, Petition for Alien Relative (hereinafter, "Form I-130"), was a form used by a United States citizen in support of a non-citizen's (hereinafter, "alien") application for United States immigration benefits.

b. DHS USCIS Form I-485, Application to Register Permanent Residence of Adjust Status (hereinafter, "Form I-485"), was a form used by an alien seeking a change in his or her immigration status.

c. DHS USCIS Form I-864, Affidavit of Support Under Section 213A of the INA (hereinafter, "Form I-864"), was a form typically submitted by a United States citizen or lawful permanent resident to show that the United States citizen or lawful permanent resident can and will financially support or assist in financially supporting an alien seeking to change his or her immigration status (hereinafter, "sponsor").

d. An applicant filing the Form I-130, the Form I-485, and/or the Form I-864 was required to sign the application under penalty of perjury under the laws of the United States, verifying that all the information and documentation submitted is complete, true, and correct. Anyone who assisted the applicant in preparing the application was also required to sign the

application and declare that the information contained within the application was true based upon the preparer's personal knowledge or information provided to the preparer by the applicant.

### Aliens Applying for United States Lawful Permanent Residence

6. An alien was an individual who was not a citizen of the United States.

7. An alien could obtain lawful permanent residence in the United States based upon his or her valid marriage to a United States citizen. The United States citizen in a valid marriage could apply for such an immigration benefit, and was often referred to as the "petitioner." The alien in such a marriage who potentially could receive the immigration benefit as a result of that marriage was often referred to as the "beneficiary spouse."

8. After marriage, the petitioner filed Form I-130 (Petition for Alien Relative) with USCIS seeking that the beneficiary spouse be classified as the spouse, and the beneficiary spouse typically simultaneously filed a Form I-485 (Application to Register Permanent Residence or Adjust Status).

9. The petitioner and beneficiary spouse then were scheduled for an interview with USCIS for the purpose of determining eligibility for the adjustment of their immigration status. USCIS used the interview to determine whether the parties established that each was free to marry, that the marriage was entered into in good faith, and that the marriage is bona fide (i.e., not entered into for the purpose of obtaining immigration benefits in the United States).

10. Along with the interview notice, an applicant was provided with a list of documents that they could bring to establish that the marriage is bona fide. That list includes things such as leases, letters or affidavits, photos, bank statements, shared bills, and documentation of shared assets. This evidence and the testimony of the parties was how the Immigration Services Officer

determined the alien's eligibility for permanent residence in the United States based upon marriage to a United States citizen.

### The Conspiracy

11.    Beginning no later than December 2020, and continuing through in or about February 4, 2025, in the District of Maryland and elsewhere,

**ELLA ZURAN,
TATIANA SIGAL,
SHAWNTA HOPPER,
ALEXANDRA TKACH,**

the defendants herein, and others known and unknown to the Grand Jury, knowingly and willfully conspired and agreed together to (1) defraud the United States by interfering with and obstructing the lawful governmental functions of the DHS USCIS, and (2) commit offenses against the United States, that is:

(a)    to knowingly make materially false statements in visa applications, visa extensions, and documents required by the immigration laws, in violation of 18 U.S.C. § 1546; and

(b)    to attempt to, and to cause an alien to enter and obtain entry to the United States by a willfully false and misleading representation and the willful concealment of a material fact, in violation of 8 U.S.C. § 1325(c).

### Purpose of the Conspiracy

12.    It was a purpose of the conspiracy for defendants to enrich themselves by operating a marriage-fraud scheme in which they created sham marriages in order to illegally obtain admission and immigrant status for aliens in the United States.

### Manner and Means of the Conspiracy

13. It was a part of the conspiracy that the defendants caused and sought to cause deceptions, false representations, and false statements to be made to DHS USCIS.

14. It was further part of the conspiracy that defendants and other persons recruited, enticed, encouraged, and groomed, and sought to recruit, entice, encourage, and groom United States citizens to engage in fake romances, engage in fraudulent marriages, and make false representations to USCIS.

15. It was further part of the conspiracy that the defendants paired aliens seeking immigration benefits with United States citizens for purposes of creating phony and fake romantic arrangements.

16. It was further part of the conspiracy that defendants caused and sought to cause United States citizens to sponsor aliens for permanent residency in the United States.

17. It was further part of the conspiracy that the defendants caused and sought to create sham marriages between aliens and United States citizens.

18. It was further part of the conspiracy that defendants arranged for the preparation of USCIS documents containing false statements, which were filed as part of, and in support of, aliens' applications for permanent residence via USCIS.

19. It was further part of the conspiracy that the defendants caused the preparation and submission of false USCIS forms so the aliens could obtain immigration benefits.

20. It was further a part of the conspiracy that sham marriages were arranged between United States citizens and aliens in which:

    (a) the alleged spouses generally did not live together and did not intend to live together;

(b) the alleged spouses entered into a marriage for the primary purpose of circumventing the immigration laws of the United States.

21. It was further part of the conspiracy that the defendants received money in exchange for assisting aliens in attempting to obtain immigration benefits and immigration status in the United States to which they were not entitled.

### Overt Acts

22. In furtherance of the conspiracy, and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of Maryland and elsewhere:

(a) In or about December 2020, **HOPPER** recruited a United States citizen spouse residing in Maryland, A.G., to enter into a sham marriage with an alien, K.G., with the promise of payment. **HOPPER** obtained copies of A.G.'s birth certificate and social security card for use in preparing a false application for immigration benefits. K.G. paid thousands of dollars to **ZURAN** to facilitate the marriage and prepare a false application for immigration benefits.

(b) In or about July 2021 in Baltimore, Maryland, **ZURAN** and **SIGAL** induced and encouraged an alien, O.A., to enter into a sham marriage with a U.S. citizen, T.W., in order to obtain immigration benefits. O.A. paid **ZURAN** and **SIGAL** thousands of dollars to facilitate the marriage and prepare a false application for immigration benefits. As part of this process, **ZURAN** and **SIGAL** sought to make O.A. and T.W.'s marriage appear legitimate to USCIS. **SIGAL** arranged for the preparation of false forms attesting to O.A.'s health status in connection with his application for immigration benefits.

(c) In or about April 2021, **HOPPER** recruited a United States citizen spouse residing in Maryland, M.B., to enter into a sham marriage with an alien, D.I. To facilitate the sham

marriage, **HOPPER** made arrangements for M.B. to travel to Connecticut, where the marriage ceremony occurred.

(d) In or about March 2022, **HOPPER** recruited a United States citizen spouse residing in Maryland, R.A., with the promise of payments in exchange for entering into a sham marriage with an alien, O.B. To facilitate the sham marriage, **HOPPER** made arrangements for R.A. to travel to Connecticut, where the marriage ceremony occurred.

(e) In or about November 2022, **SIGAL** induced and encouraged a United States citizen living in Maryland, S.T., to marry an alien, U.M., and on or about March 2023, S.T. married U.M. in Baltimore.

(f) On or about December 18, 2023, **ZURAN** contacted S.T., and directed S.T. to schedule an interview with USCIS personnel to substantiate the validity of S.T.'s marriage with U.M.

(g) On or about October 2023, in Maryland, **SIGAL** and **TKACH** induced and encouraged a United States citizen spouse, T.M., to enter into a sham marriage with an alien, N.M.

(h) On or about October 2023, **SIGAL** and **TKACH** induced T.M. to sign a false Form I-130 petition on behalf of N.M.

18 U.S.C. § 371

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982(a)(6) and (b)(1) and 21 U.S.C. § 853(p), in the event of the defendants' conviction under Count One of this Indictment.

2. Upon conviction of the offense alleged in Count One of this Indictment the defendants,

**ELLA ZURAN,**
**TATIANA SIGAL,**
**SHAWNTA HOPPER,**
**ALEXANDRA TKACH,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(6), (i) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense; and (ii) any property real or personal that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense, or that was used to facilitate, or was intended to be used to facilitate, the commission of the offense.

### Property Subject to Forfeiture

3. The property to be forfeited includes but is not limited to a money judgment in the amount each of the defendants obtained as a result of Count One of this Indictment.

### Substitute Assets

4. If, as a result of any act or omission of any of the defendants, any of the property described above as being subject to forfeiture:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third person;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or,

  e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

18 U.S.C. § 982(a)(6)
18 U.S.C. § 982(b)(1)
21 U.S.C. § 853(p)

Date: _____

               _____
               Erek L. Barron
               United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**
FOREPERSON

               2-5-25
               Date